UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LANDON G. QUENZER,

    Petitioner,

v.

    Case No. 22-cv-11017
    Honorable Linda V. Parker

JONATHAN HEMINGWAY,

    Respondent.
_____/

### OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241 AND GRANTING PETITIONER LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner Landon G. Quenzer, confined at the Federal Correctional Institution in Milan, Michigan, filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Petitioner challenges a prison disciplinary hearing decision by the Bureau of Prisons (BOP) which resulted in the loss of good conduct time credits and privileges. For the reasons stated below, the Court is denying the petition for a writ of habeas corpus.

### I.  Background

Petitioner is a federal prisoner who is serving a 120-month sentence for conspiracy to distribute a controlled substance under 21 U.S.C. § 841(a)(1).

On August 31, 2020, a prison officer filed an incident report charging Petitioner with possessing a cellular telephone and a battery pack. (Incident

1

Report, ECF No. 7-3.)  A prison counselor entered Petitioner's cell and saw a cell phone sitting on the desk in the common area.  (8/31/20 Memo, ECF No. 7-3 at Pg ID 166.)  The cell phone was taped to what appeared to be an improvised battery pack with multiple wires attached to it.  (*Id.*)  Petitioner's inmate identification card was discovered on the same desk as the phone and battery pack.  (*Id.*)

The case was referred to the Federal Bureau of Investigation (FBI), but the FBI declined to investigate on October 21, 2020.  (Referral, ECF No. 7-4.)  The case was sent back to the prison for administrative processing.

The following day, October 22, Petitioner was given a copy of the incident report by the investigating lieutenant and advised of his rights during the prison disciplinary process.  (Incident Report, ECF No. 7-3.)  According to the report, Petitioner was advised of his right to remain silent and stated he understood that right.  (*Id.* at 2, Pg ID 164.  Petitioner then informed the lieutenant that after he got back from work and showered, his cellmate came back, the two men were counted, and then pulled from the cell.  (*Id.*)  Petitioner claimed that the cellmate threw the phone while informing Petitioner that he also discarded another phone in their cell.  (*Id.*)  Petitioner reported that his cellmate later told him he was "holding phones for other inmates," and that Petitioner didn't know his cellmate had a phone.  (*Id.*)  The lieutenant found "greater weight" supporting a charge against Petitioner.  (*Id.*)

2

The incident report was referred to the Unit Discipline Committee (UDC), which requested and was granted an extension of time to conduct the investigation and hearing. (Request, ECF No. 7-5.) Thereafter, Petitioner was given written notice of the hearing and advised of his hearing rights. (Hr'g Notice, ECF No. 7-6; Hr'g Rights, ECF No. 7-7.) Petitioner waived his right to have a staff representative appear on his behalf and stated he did not wish to have any witnesses. (Hr'g Notice, ECF No. 7-6 at Pg ID 171.) During the UDC investigation, Petitioner stated: "I was not aware of any contraband in the room. I am not g[uilty]. Staff pulled me out first and I had nothing on me." (Discipline Hr'g Officer Report § V, ECF No. 7-8 at Pg ID 174.)

The UDC hearing was held on November 9, 2020. (*See* Discipline Hearing Officer Report at 1, ECF No. 7-8 at Pg ID 173.) During the hearing, the discipline hearing officer reviewed Petitioner's due process rights with him, and Petitioner indicated that he understood his rights. (*Id.* at § V, Pg ID 174.) Petitioner waived his right to staff representation at the hearing, did not request any witnesses, and did not present any documentary evidence. (*Id.*) During the hearing, Petitioner stated: "We keep our cell clean. I didn't know anything about it." (*Id.*) (*Id.* at Pg ID 174.)

"[B]ased on the greater weight of the evidence," the discipline hearing officer found Petitioner guilty of possessing a cell phone (code 108) and

3

possessing a makeshift battery pack (code 305). (*Id.* § V, Pg ID 174.) In making this determination, the discipline hearing officer relied on the reporting officer's statement, memorandum from prison staff, photographs of the cell phone and battery pack, and Petitioner's statements throughout the disciplinary process. (*Id.*)

The discipline hearing officer also observed that all prisoners are made aware through admission, orientation, and the inmate handbook that if contraband is discovered or confiscated in a common area of the cell, all inmates assigned to that cell will be held accountable. (*Id.*) The discipline hearing officer also noted that although Petitioner stated that he kept his cell clean and there wasn't any contraband in the cell, he was at least aware of the cell phone and battery pack because his cellmate stated that he used the phone on the day of the incident during the time that all inmates were secured in their cells due to count and Covid restrictions. (*Id.*)

Petitioner sought administrative review of the decision. (Appeal, ECF No. 7-9.) Petitioner's appeals were denied. (*Id.*) Petitioner now seeks a writ of habeas corpus, arguing: (1) that he was not in possession of a cell phone or battery pack and, (2) that his due process rights were violated by going over the five-day limit to see the UDC. (Pet., ECF No. 1.)

## II. Discussion

A petition for a writ of habeas corpus filed by a federal inmate under § 2241 is proper where the inmate is challenging the manner in which his sentence is being executed. *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998).

The Court construes Petitioner's first argument as a claim that there was insufficient evidence to establish that he possessed the cell phone and battery pack found in his cell. Petitioner points to an affidavit signed by his cellmate, who states that the contraband was his and not Petitioner's. (*See* Aff., ECF No. 1 at Pg ID 12.)

"Not much evidence is required to support the action of a prison disciplinary board." *Williams v. Bass,* 63 F.3d 483, 486 (6th Cir. 1995) (citing *Superintendent, Mass. Corr. Inst.*, 474 U.S. 445 (1985)). As the Supreme Court and Sixth Circuit have indicated: "'Some evidence' is all that is needed." *Id.* (quoting *Hill*, 472 U.S. at 455). When deciding whether a prison disciplinary board decision is supported by evidence, a federal court is "not required to examine the entire record, make an independent assessment of the credibility of witnesses, or weigh the evidence." *Id*. at 486 (citing *Hill*, 472 U.S. at 455). "Instead, the relevant question is whether there is *any* evidence in the record that could support the conclusion reached by the disciplinary board." *Id.* (quoting *Hill*, 472 U.S. at 455-56) (emphasis in original). "[T]he reasonable-doubt standard does not apply." *Hampton v. Williams*, Nos. 20-

3158, 3420, 2021 WL 3519333, at *3 (6th Cir. Apr. 28, 2021); *see also Mullins v. Smith,* 14 F. Supp. 2d 1009, 1012 (E.D. Mich. 1998).

"[C]ourts 'have uniformly held that the discovery of contraband in a shared cell constitutes 'some evidence' of possession sufficient to uphold a prison disciplinary sanction against each inmate in the cell.'" *Horton v. Hemingway*, No. 21-1388, 2021 WL 5183547, at *2 (6th Cir. Nov. 8, 2021) (quoting *Denny v. Schutlz*, 708 F.3d 140, 145 (3d Cir. 2016) and citing additional cases). In *Horton*, the Sixth Circuit affirmed the district court's denial of a habeas petition challenging a decision that the petitioner violated prison rules after two SIM cards were found in his shared cell, even though the petitioner's cellmate admitted that the SIM cards were his. *Id.* at *2; *see also Spears v. Hemingway*, No. 20-cv-13392, 2021 WL 3164283, at *3 (E.D. Mich. July 27, 2021) (upholding the BOP's disciplinary decision where a corrections officer found an eight-inch shiv underneath the petitioner's locker in his shared cell, and the petitioner's cellmate took responsibility for it); *McCarthy v. Hemingway*, 20-cv-12846, 2021 WL 927375, at *3 (E.D. Mich. March 11, 2021) (denying habeas relief where marijuana was found in a common area of the petitioner's shared cell and the petitioner's cellmate admitted that the marijuana belonged to him). As the Sixth Circuit reasoned in *Horton*, "prison rules require inmates to keep their area free from contraband, regardless of whether the contraband belongs to a cellmate."

2021 WL 5183547, at *2 (citing Inmate Discipline & Special Housing Units, Bureau of Prisons Policy Statement 5270.09, APp'x C); *see also Denny*, 708 F.3d at 146 (emphasis added) (explaining that when two or more federal prisoners share a cell, "each individual prisoner is responsible for keeping *the entire cell* free from contraband"). "Because each prisoner in a shared cell has an affirmative responsibility to keep the entire cell . . . free from contraband," courts have upheld the BOP's decisions that "any contraband found within the cell is constructively possessed by each of the inmates housed in that cell." *Denny*, 708 F.3d at 146.

A prison guard entered Petitioner's cell and discovered the cell phone and battery pack on a desk in an area accessible to Petitioner. Petitioner's inmate identification card was in the same area. "[The mere discovery of contraband in [Petitioner's] shared cell constitute[d] 'some evidence' that each prisoner in that cell [including Petitioner] possessed the contraband." *Id*. Because the hearing officer's decision is supported by "some evidence" in the record, Petitioner is not entitled to habeas relief on his first claim. Further as noted above, Petitioner was at least aware of the cell phone and battery pack because his cellmate stated that he used the phone on the day of the incident during the time that all inmates were secured in their cells due to count and Covid restrictions. *See Humphreys v. Hemingway,* 77 F. App'x 788, 789 (6th Cir. 2003).

,

Petitioner also claims that he is entitled to habeas relief because the UDC did not conduct its hearing in the matter within five days after the investigative report was issued, as stated in 28 C.F.R. § 541.7(c). The regulation provides:

> The UDC will *ordinarily* review the incident report within five work days after it is issued, not counting the day it was issued, weekends, and holidays. UDC review of the incident report may also be suspended if it is being investigated for possible criminal prosecution.

28 C.F.R. § 541.7(c) (emphasis added). Another judge in this district, in rejecting such a claim, noted that "courts have consistently found that a UDC's delay in reviewing an incident report does not violate a federal prisoner's right to due process." *Linares v. Terris*, No. 17-cv-11085, 2018 WL 1709027, at *4 (E.D. Mich. Apr. 9, 2018) (citing *Whyte v. Snyder-Norris*, No. 0:16-cv-1, 2016 WL 4069874, at *5 (E.D. Ky. July 28, 2016), *aff'd*, No. 16-6379, 2017 WL 4071133 (6th Cir. June 27, 2017); *Henson v. Longley*, No. 3:13-cv-830, 2015 WL 5604273, at *3 (S.D. Miss. Sept. 23, 2015) (collecting cases)); *see also Epps v. Beard*, No. 0:20-cv-44, 2022 WL 1462762, at *5 (E.D. Ky. May 9, 2022) (collecting additional cases and finding no due process violation when UDC review was conduct "well after the typical five-day period"). In *Whyte v. Snyder-Norris*, No. 16-6379, 2017 WL 4071133 (6th Cir. June 27, 2017), the Sixth Circuit likewise found no due process violation when the petitioner's disciplinary hearing was held outside the five-day window—fifteen days after he received notice. *Id*. at *1

8

As the district court reasoned in *Linares*, the regulation provides that UDC "ordinarily" will complete its review within five days of the incident report being issued. 2018 WL 1709027, at *4. The district court explained in *Epps*, when speaking of the time frame for the UDC review and for delivering a copy of the incident report to the prisoner:

> [B]oth provisions indicate that these time frames will "ordinarily" be met, not that they must be met in all instances. Through its inclusion of the qualifying term "ordinarily," the rule 'intrinsically contemplates the possibility that prison staff might need additional time . . .

2022 WL 1462762, at *5. As the timing is not mandatory, Petitioner is not entitled to relief on his second claim.

### III. Conclusion

For these reasons, the Court concludes that Petitioner is not entitled to habeas relief under § 2241. A certificate of appealability is not needed to appeal the denial of a habeas petition filed under § 2241. *Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004). Nevertheless, a petitioner seeking to appeal the denial of such a petition in forma pauperis must obtain permission before doing so. The Court is granting Petitioner leave to appeal in forma pauperis because any appeal would be taken in good faith. *See* 28 U.S.C. § 1915(a)(3).

Accordingly,

**IT IS ORDERED** that the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is granted leave to appeal in forma pauperis, if he chooses to appeal this decision.

                                                        s/ Linda V. Parker
                                                        LINDA V. PARKER
                                                        U.S. DISTRICT JUDGE

Dated: November 17, 2022

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, November 17, 2022, by electronic and/or U.S. First Class mail.

                                                        s/Aaron Flanigan
                                                        Case Manager